THIS OPINION IS A
PRECEDENT OF THE TTAB

Oral Hearing:                          Mailed:
February 27, 2007                      August 13, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Beaverton Foods, Inc.
_____

Serial No. 76624790
_____

Kenneth S. Klarquist of Klarquist Sparkman, LLP, for
Beaverton Foods, Inc.

David Taylor, Trademark Examining Attorney, Law Office 112
(Angela Wilson, Managing Attorney).
_____

Before Hohein, Grendel and Kuhlke, Administrative Trademark
Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Beaverton Foods, Inc. has filed an application to
register the mark NAPA VALLEY MUSTARD CO. (in standard
character form) on the Principal Register for "condiments,
namely mustard" in International Class 30.[1]

The examining attorney initially refused registration
on the ground that the mark is either primarily

---

[1] Application Serial No. 76624790, filed December 17, 2004, under
Section 1(a) of the Trademark Act, 15 U.S.C. §1051(a), alleging
1983 as the date of first use of the mark anywhere and in
commerce.

geographically descriptive under Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2), or primarily geographically deceptively misdescriptive under Trademark Act Section 2(e)(3), 15 U.S.C. §1052(e)(3), and requested information as to where the goods originate. Applicant responded by submitting a declaration attesting that the mark had become distinctive, under Section 2(f), 15 U.S.C. §1052(f), prior to December 8, 1993, the date of enactment of the North American Free Trade Agreement (NAFTA) Implementation Act, by reason of substantially exclusive and continuous use. Applicant also indicated that its goods are manufactured in Oregon "from mustard seed grown in the Northern tier states and in Canada, but not in the Napa Valley." Response filed September 26, 2005. The examining attorney then withdrew the refusals under Sections 2(e)(2) and 2(e)(3), and issued a refusal under Trademark Act Section 2(a), 15 U.S.C. §1052(a), on the ground that applicant's mark is geographically deceptive, and required a disclaimer of the generic wording MUSTARD CO. Applicant responded by disclaiming MUSTARD CO. and arguing against the refusal under Section 2(a). This appeal followed. Briefs have been filed and an oral hearing was held on February 27, 2007.

At issue on appeal is the refusal under Section 2(a). It has been the examining attorney's contention that applicant does not dispute the finding that the mark is geographically deceptive under Section 2(a). While applicant has not argued the merits of the refusal, we do not view this as a concession of geographical deceptiveness under Section 2(a). Applicant argued the threshold question of whether or not the application of Section 2(a) is appropriate and, thus, did not reach the merits. By its amendment to seek registration under Section 2(f) and its admission that the goods do not emanate from NAPA VALLEY, we may conclude that applicant has conceded that its mark is, at least, primarily geographically misdescriptive. Cf. Yamaha Int'l Corp. v. Hoshino Gakki Co. Ltd., 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988); In re Cabot Corp., 15 USPQ2d 1224, 1229 (TTAB 1990). However, by seeking registration under Section 2(f), applicant has not conceded that its mark is geographically deceptive under Section 2(a). Therefore, we will consider both the threshold question of the applicability of Section 2(a) to geographically deceptive marks and the merits of the refusal.

It is applicant's position that the following highlighted provision in Section 2(f) of the Trademark Act

3

"precludes the application of any ground in Section 2 to refuse registration of a mark which qualifies for registration under the provision of Subsection 2(f)." (Br. p. 3)  Section 2(f) of the Trademark Act is set forth below:

> Except as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce.  The Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made.  **Nothing in this section shall prevent the registration of a mark which, when used on or in connection with the goods of the applicant, is primarily geographically deceptively misdescriptive of them, and which became distinctive of the applicant's goods in commerce before the date of enactment of the North American Free Trade Agreement Implementation Act.**

15 U.S.C. §1052(f) (emphasis added).

Applicant supports its interpretation of Section 2(f) by relying on the "Statement of the Committee on the Judiciary – Summary of Subtitle C – Intellectual Property Provisions of S. 1627, the North American Free-Trade Agreement Implementation Act," quoting the following language:

> The bill contains a grandfather clause that
> covers U.S. marks containing geographical terms
> that are in use or registered prior to the date
> of enactment.

Applicant argues that "[i]t was obviously the expressed intent of Congress that eligible geographically deceptively misdescriptive marks should be registrable and not rejected because they are 'deceptive,' hence the proviso in Subsection 2(f)." Br. p. 4. Applicant contends that the examining attorney improperly relied on In re California Innovations, 329 F.3d 1334, 66 USPQ2d 1853 (Fed. Cir. 2003), inasmuch as the application in that case was based on intent to use and did not raise the issue of the grandfather clause. Applicant further notes that the Court in California Innovations stated that "[a]s a result of the NAFTA changes to the Lanham Act, geographic deception is specifically dealt with in subsection (e)(3), while deception in general continues to be addressed under subsection (a)." California Innovations, supra, 66 USPQ2d at 1858.

We begin our analysis with a brief review of how the USPTO has treated marks with geographic terms. Prior to the implementation of NAFTA, with the consequent amendment of the Lanham Act to place the refusal of primarily geographically deceptively misdescriptive marks in Section

2(e)(3), rather than in Section 2(e)(2) along with primarily geographically descriptive marks, the USPTO recognized three categories of geographic marks: 1) primarily geographically descriptive, 2) primarily geographically deceptively misdescriptive, and 3) geographically deceptive. Marks falling in the first two categories were refused registration under section 2(e)(2) but were registrable upon a showing of acquired distinctiveness under Section 2(f). The test for determining whether a mark was primarily geographically descriptive or primarily geographically deceptively misdescriptive consisted of the following elements: the primary significance of the mark is a generally known geographic location; the goods or services do (for geographically descriptive marks) or do not (for geographically deceptively misdescriptive marks) originate in the place identified in the mark; and purchasers would be likely to believe that the goods or services originate in the geographic place identified in the mark. See In re California Pizza Kitchen Inc., 10 USPQ2d 1704, 1705 (TTAB 1988), citing In re Societe Generale des Eaux Minerales de Vittel S.A., 824 F.2d 957, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987) (primarily geographically descriptive); and In re Loew's Theatres, Inc., 769 F.2d 764, 226 USPQ 865, 867

(Fed. Cir. 1985) (primarily geographically deceptively misdescriptive). Marks falling in the geographically deceptive category were refused registration under Section 2(a) and were unregistrable, i.e., such marks were not eligible for registration under Section 2(f). The test for determining geographically deceptive marks mirrored the test for primarily geographically deceptively misdescriptive marks with the addition of the following element: the geographic misrepresentation is a material factor in the consumer's decision to buy the goods or use the services. See Institut National des Appellations D'Origine v. Vintners International Co. Inc., 958 F.2d 1574, 22 USPQ2d 1190, 1195 (Fed. Cir. 1992). See also In re Juleigh Jeans Sportswear Inc., 24 USPQ2d 1694 (TTAB 1992). Thus, the test under Section 2(a) had the added element of materiality.

The NAFTA amendments assigned the same Section 2(a) proscription to registration of geographically deceptive marks to primarily geographically deceptively misdescriptive marks under Section 2(e)(3) and, thus, eliminated the ability of a primarily geographically deceptively misdescriptive mark to qualify for registration under Section 2(f). The Court, in California Innovations, recognizing the serious implications for a primarily

geographically deceptively misdescriptive term, incorporated the test previously used under Section 2(a) into the test used under the newly created Section 2(e)(3) and included the materiality component for a refusal under Section 2(e)(3), making it more difficult for a mark to be refused registration on the basis that it is a primarily geographically deceptively misdescriptive term.[2]

Although the Court recognized that Section 2(a) "has traditionally been used to reject geographic marks that materially deceive the public," California Innovations, supra, 66 USPQ2d at 1854, as a result of its decision the Court noted that it anticipated that the "PTO will *usually* address geographically deceptive marks under subsection (e)(3), while deception in general continues to be addressed under subsection (a)." Id. at 1858 (emphasis added).

---

[2] By imposing the more rigorous test with its element of materiality, the Court has made fewer marks subject to a refusal under Section 2(e)(3) and thus, not only will there be fewer marks which otherwise would need to resort to the grandfather provision of Section 2(f) in order to be registrable, but more marks will be registrable simply because Section 2(e)(3) will be inapplicable. Those marks in which the geographic misdescriptiveness is not material to the purchasing decision, that prior to the NAFTA amendments would have been regarded as primarily geographically deceptively misdescriptive and thus would have required a showing of acquired distinctiveness for registration on the Principal Register, now no longer require such a showing in order to be registrable. If the materiality element cannot be supported, then a mark which otherwise would be primarily geographically deceptively misdescriptive is registrable on the Principal Register.

The Board recently discussed California Innovations in In re South Park Cigar Inc., 82 USPQ2d 1507 (TTAB 2007). The Board stated that "in keeping with the Court's instructions and its construction of the statute, we deem the appropriate refusal in this case involving an allegedly geographically deceptive mark to be only the Section 2(e)(3) 'primarily geographically deceptively misdescriptive' refusal, and not the Section 2(a) deceptiveness refusal." Id. at 1509. The Board noted that "unless the applicant is seeking registration ... on the Principal Register under Section 2(f) based on a claim that the mark had acquired distinctiveness prior to December 8, 1993, the proper refusal is under Section 2(e)(3), not Section 2(a)..." Id. at 1509 n. 3.

We must now address precisely that circumstance noted in the Board's prior decision. As discussed above, applicant essentially argues that the grandfather clause in Section 2(f) overcomes a Section 2(a) geographical deceptiveness refusal when the geographic term at issue has been in use and had acquired distinctiveness prior to December 8, 1993. As cited by applicant, a grandfather clause "creates an exemption from the law's effect for something that existed before the law's effective date; spec., a statutory or regulatory clause that exempts a

9

class of persons or transactions because of circumstances existing before the new rule or regulation takes effect." Black's Law Dictionary, (8th ed. 2004).

Contrary to applicant's argument, we find that the Section 2(f) grandfather clause does not protect those "geographically deceptive" marks that would have been considered unregistrable under Section 2(a) prior to NAFTA. Rather, the grandfather clause is meant to provide a means for registering those marks that, prior to NAFTA implementation, could have been registrable under Section 2(f), i.e., primarily geographically deceptively misdescriptive marks where the geographic misdescriptiveness was not material to the purchasing decision. The fact that primarily geographically deceptively misdescriptive marks post-NAFTA are now the equivalent of geographically deceptive marks pre-NAFTA does not render registrable a mark that pre-NAFTA would have been refused as geographically deceptive under Section 2(a). The language of Section 2(f) clearly states that marks refused under Section 2(a) are not registrable under its provisions. The exception clearly applies only to pre-NAFTA "primarily geographically deceptively misdescriptive" marks, but not to pre-NAFTA "geographically deceptive" marks.

In short, the purpose of the grandfather clause in Section 2(f) is to allow registration of primarily geographically deceptively misdescriptive marks that would have been eligible for registration under Section 2(f) prior to the NAFTA amendments and not, as applicant's interpretation would have it, to provide a windfall to applicants seeking to register marks that prior to the NAFTA amendments would have been unregistrable under Section 2(a). Moreover, as noted above, a mark that was geographically deceptive prior to December 8, 1993 was not eligible for registration under Section 2(f) and thus cannot be covered by the grandfather clause.

Building on the decision in South Park Cigar, we hold that where an applicant is seeking registration for a mark with a geographic term on the Principal Register under Section 2(f) based on a claim that the mark had acquired distinctiveness prior to December 8, 1993, a geographically deceptive mark is properly refused registration under Section 2(a). Nothing in the statute or legislative history dictates otherwise. Moreover, this analysis is consistent with the practice of the USPTO. See TMEP Section 1210.05(a) (4th ed. 2005).

11

In view of our determination that the refusal under Section 2(a) is proper, we now turn to consider the merits of the refusal.

In support of the refusal under Section 2(a) the examining attorney argues that the primary significance of the phrase NAPA VALLEY is geographic and that the addition of the generic or highly descriptive terms MUSTARD CO. does not detract from the primary geographic significance. The examining attorney submitted the dictionary definitions for the terms MUSTARD and CO. showing that "mustard" is a condiment made from powdered mustard seeds and "co." is the abbreviation for the word "Company." See The American Heritage Dictionary of the English Language (3d ed. 1992). Moreover, as noted above, applicant has disclaimed these terms.

With regard to the phrase NAPA VALLEY the examining attorney submitted printouts from various websites retrieved from the Internet where NAPA VALLEY is used by third parties to describe a geographic location. See, napanews.com and napavalley.com.

In support of the goods/place association and the materiality elements, he attached printouts from various websites where NAPA VALLEY is used by third parties in

12

connection with mustard.  As shown below, one example

pertains to applicant's proposed mark.

> Napa Valley Mustard Festival ... Celebrate the
> food, wine, art, and the rich, unique
> agricultural and cultural bounty of the Napa
> Valley!
> The Mustard Season offers a full palette of food,
> wine, art, entertainment and cultural activities
> staged throughout the world-famous grape growing
> region when fields, vineyards, and hillsides are
> vibrant with wild mustard in bloom.
> www.mustardfestival.org;
>
> Napa Valley Mustard Co. ... The beautiful Napa
> Valley produces some of the finest array of
> gourmet foods.  We have selected our favorite
> Napa Valley Mustards for you to enjoy.
> www.oakvillegrocery.com;
>
> Napa Valley Mustard Festival
> Marketplace...Mustards and an array of gourmet
> products will be showcased alongside sensational
> wine country cuisine, world famous wines, hearty
> craft brews, and fine arts and crafts.  The
> Marketplace will provide you with the opportunity
> to explore the best of Napa Valley during the
> most beautiful time of year in the wine country,
> when the brilliant gold of mustard in bloom
> carpets hillsides, valleys and vineyards.
> www.upcoming.org; and
>
> Another annual event The Napa Valley Mustard
> Festival began in 1993 and promotes travel to the
> Napa Valley in the "off season" with a number of
> events celebrating food, wine and art.  The
> yellow mustard flowers that blanket the Napa
> Valley every spring set the theme for over a
> dozen dinners, wine tasting, art exhibits and
> other events.
>
> The bright yellow flowers are said to have
> originated in California when Father Junipero
> Serra made his first exploratory trip north
> through the state scattering mustard seeds as he
> went.  His return trip the following spring was

then guided by a path of blooming mustard.
www.inetours.com.

We are persuaded by the evidence of record that the primary significance of the phrase NAPA VALLEY is a well known geographic location.  Further, applicant has acknowledged that its goods do not originate from there. The record also shows that purchasers are likely to believe the goods originate from there.  The evidence of a widely advertised annual festival dedicated to mustard supports the goods/place association, and the further connection of the area to wineries and gourmet food enhance that association.  Moreover, applicant does not dispute that NAPA VALLEY is a geographic term and, by seeking registration under Section 2(f), has conceded that the mark as a whole is geographically misdescriptive.

Finally, we find that the misrepresentation is a material factor in a consumer's decision to purchase these goods inasmuch as the Napa Valley is known for mustard.  We particularly note the following statement in the advertisement for applicant's goods that clearly implies that the mustard originates in NAPA VALLEY:  "The beautiful Napa Valley produces some of the finest array of gourmet foods.  We have selected our favorite Napa Valley Mustards for you to enjoy."  Although it is not clear whether this

14

advertisement for applicant's goods was based on applicant's own materials, or whether the language was the idea of the retailer, either way it shows that a selling point for the mustard is that it comes from Napa Valley.

In summary, in view of the evidence submitted by the examining attorney, we find that NAPA VALLEY is a well known geographic location and that it is also sufficiently known for mustard and other gourmet items for such location to be a material factor in the purchasing decision. Thus, the mark is unregistrable under Section 2(a).

**Decision**: The refusal under Section 2(a) is affirmed.